BERKES CRANE SANTANA & SPANGLER LLP
Steven M. Crane (SBN108930)
  *scrane@bcsslaw.com*
Laurie S. Julien (SBN136974)
  *ljulien@bcsslaw.com*
515 South Figueroa Street, Suite 1500
Los Angeles, California 90071
Telephone:  (213) 955-1150
Facsimile:   (213) 955-1155

Attorneys for Plaintiff,
RLI INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RLI INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>      v.<br><br>BRIAN PERRIN MARINE, INC.;<br>BRIAN PERRIN MARINE, INC., DBA<br>UPGRADE MARINE; BRIAN<br>PERRIN MARINE, INC., DBA<br>UPGRADE OFFROAD; JUSTIN<br>CARDENAS; GARRETT NEWBY;<br><br>              Defendants. | CASE No. **'23 CV 0846 BEN AHG**<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**[Demand for Jury Trial]** |

Plaintiff RLI INSURANCE COMPANY ("RLI") alleges:

## NATURE OF THE ACTION

1.      This is an insurance coverage dispute among and between RLI and Defendants Brian Perrin Marine, Inc. ("BP Marine"), Brian Perrin Marine, Inc. DBA Upgrade Marine ("BP Marine DBA Upgrade Marine"), Brian Perrin Marine, Inc. DBA Upgrade Offroad ("BP Marine DBA Upgrade Offroad"), Justin Cardenas ("Cardenas") and Garrett Newby ("Newby"), relating to an underlying action arising out of an all-terrain vehicle accident ("ATV Accident"), described below.  RLI asks the Court to declare and adjudge the respective rights, duties and obligations of the

parties under a marine general liability policy issued by RLI to BP Marine DBA Upgrade Marine, identified below, in connection with the underlying action.

2.      RLI asks the Court to declare that there is no coverage under the marine general liability policy that RLI issued to BP Marine DBA Upgrade Marine in connection with the underlying action, on the basis that the marine policy does not provide coverage for bodily injury arising directly or indirectly out of the ATV Accident.  Specifically, the marine general liability policy expressly excludes coverage for "Non-Marine Work" including any operations that do not involve watercraft, and the underlying action arises out of the ATV Accident.  In addition, RLI asks the Court to declare that there is no coverage under the marine general liability policy for BP Marine DBA Upgrade Offroad in connection with the underlying action, because it is not an insured under the marine general liability policy.

## THE PARTIES

3.      RLI is, and at all relevant times hereto was, a corporation incorporated in Illinois with its principal place of business in Peoria, Illinois.  At all times mentioned herein, RLI was and is an insurance company authorized to do business in California.

4.      RLI is informed and believes, and based thereon alleges, that at all times mentioned herein, BP Marine is and was a California corporation with its principal place of business in San Diego, California, and that BP Marine uses the fictitious business names of Upgrade Marine and Upgrade Offroad.

5.      RLI is informed and believes, and based thereon alleges, that at all times mentioned herein, Cardenas is and was an individual residing in San Diego, California, and is named as a defendant in the underlying action.

6.      RLI is informed and believes, and based thereon alleges, that at all times mentioned herein, Newby is and was an individual residing in San Diego, California, and is the plaintiff in the underlying action.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the claims for relief pursuant to 28 U.S.C. §1332(a)(1), in that there is complete diversity of citizenship between RLI and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.  Defendants claim that RLI has a duty to defend and indemnify in connection with the underlying action, which forms the basis of this action, under the RLI marine policy that has a $1 million each occurrence policy limit.  Additionally, this Court has jurisdiction over the declaratory relief claim pursuant to 28 U.S.C. §§2201 and 2202.

8.     Venue is proper in this judicial district, and before this Court, pursuant to 28 U.S.C. §1391(a)(1) and (a)(2) because one or more Defendants reside in and/or are doing business in this judicial district, one or more of the Defendants' principal places of business are in this judicial district, and/or a substantial part of the events giving rise to the claims occurred in this judicial district.  Additionally, the underlying action, on which this action is based, took place in this judicial district.  Furthermore, the insurance policy that is the subject of this litigation was issued in this judicial district.

## THE RLI MARINE POLICY

9.     BP Marine DBA Upgrade Marine applied for marine general liability insurance with RLI.  According to its website, Upgrade Marine offers certified marine installations, services and upgrades of older electronics and electrical systems on boats and yachts.  Based on the information provided by BP Marine DBA Upgrade Marine, on May 25, 2021, RLI issued a quote for the marine policy, explicitly stating that the marine policy does not provide coverage for "Non-Marine Work" including operations which are not performed to a watercraft, as follows:

**Specific Work Exclusions:**

Non-Marine Work (+)

**+ Definition of Non-Marine Work: The term "Non-**

1      **Marine Work" means any work, repairs, operations**

2      **or completed operations which are not specifically**

3      **performed to a watercraft or to a watercraft's**

4      **component parts including but not limited to its**

5      **machinery, equipment, accessories, gear or motors.**

6  A true and correct copy of the quote for the RLI marine policy is attached hereto as

7  **Exhibit 1.**

8      10.    Based on the information provided by BP Marine DBA Upgrade

9  Marine in its application, and in accordance with the quote, RLI issued Marine

10  General Liability Policy no. EMA0100899 with effective dates of May 8, 2021 to

11  May 8, 2022 to "Brian Perrin Marine, Inc. DBA: Upgrade Marine" ("the Marine

12  Policy").[1]  A true and correct certified copy of the Marine Policy is attached hereto

13  as **Exhibit 2**.

14      11.    The Marine Policy Declarations specify the liability coverage provided

15  by the policy as: "Coverage Part…Marine General Liabilities."  The Marine Policy

16  contains an insuring agreement for marine general liability coverage that provides, in

17  relevant part, as follows:

18      **SECTION 1**

19      **MARINE GENERAL LIABILITY COVERAGE**

20      **PART**

21      **COVERAGE A: BODILY INJURY AND PROPERTY**

22      **DAMAGE LIABILITY**

23      **I.      INSURING AGREEMENT**

24      A.      We will pay those sums that the Insured becomes

25  ─────────────────

26  [1] The named insured on the Marine Policy issued by RLI is identified as: "Brian
Perrin Marine, Inc. DBA: Upgrade Marine, DBA: BP Solar Electric;" however, BP

27  Solar Electric is not at issue in this action and was not sued in the Underlying

28  Action.

legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.… [Policy form OMGL (03/13), pg. 1]

12.    The Marine Policy contains the following endorsement limiting the coverage afforded under the Marine Policy to risks involving watercraft, as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SPECIFIC WORK EXCLUSION AND/OR BUY-BACK ENDORSEMENT**

This insurance does not apply nor do we have a duty to defend any loss, claim, or "suit" for "bodily injury," "property damage," "personal injury," "advertising injury" or medical payments arising directly or indirectly out of any type of work, repairs, operations or completed operations as listed below.

1. Non-Marine Work

**Definition of Non-Marine Work:**

The term "Non-Marine Work" as used in this endorsement means any work, repairs, operations or completed operations which are not specifically performed to a watercraft or to a watercraft's component parts including but not limited to its machinery, equipment, accessories, accessories, gear or motors.

THE ABOVE EXCLUSION(S) FOR MARINE OR NON-

MARINE WORK SHALL NOT APPLY TO THE TYPE OF WORK, REPAIRS, OPERATIONS OR COMPLETED OPERATIONS AS LISTED BELOW.

1. NONE [Policy form OMGL 635 (03/13)]

13.    The Marine Policy sets forth the entities that qualify as insureds under the Marine Policy, in pertinent part, as follows:

**A.    Who Is An Insured**

1.    If you are designated in the Declarations as: . . .

   d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders....

2.    Each of the following is also an insured: …

3.    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a.    Coverage under this provision is afforded only until the ninetieth (90th) day after you acquire or form the organization or the end of the policy period, whichever is earlier; … [Policy form OMGL

101 (02/12), pg. 2]

## THE UNDERLYING ACTION

14.     On February 5, 2022, Cardenas was driving his ATV with Newby as a passenger, when he got in the ATV Accident.  The ATV Accident took place at the Imperial Sand Dunes near the intersection of Ted Kipf Road/ Wash Road and Highway 78.  Newby claims injuries stemming from the ATV Accident.

15.     On or about March 14, 2023, Newby filed an action against Upgrade Marine, Upgrade Offroad[2] and Cardenas, alleging causes of action for "Motor Vehicle" and "General Negligence," styled *Garrett Newby v. Justin Cardenas, et al.*, San Diego Superior Court Case No. 37-2023-00010440-CU-PO-CTL ("Underlying Action").  The Underlying Complaint alleges that Upgrade Marine and Upgrade Offroad employed Cardenas.  A true and correct copy of the complaint in the Underlying Action ("Underlying Complaint") is attached as **Exhibit 3**.

16.     RLI denies that it has any duty to defend or indemnify BP Marine DBA Upgrade Marine (sued in the Underlying Action as Upgrade Marine), BP Marine DBA Upgrade Offroad (sued in the Underlying Action as Upgrade Offroad) or Cardenas in connection with the Underlying Action because the Marine Policy does not provide coverage for bodily injury resulting from an ATV Accident.  RLI also denies that BP Marine DBA Upgrade Offroad is an insured under the Marine Policy because Upgrade Offroad is not a named insured on the Marine Policy, and does not qualify as an insured under the "Who Is An Insured" provision of the Marine Policy.

17.     RLI names Newby, the plaintiff in the Underlying Action, as a defendant for the purpose of binding Newby to the judgment rendered in this action. / / /

---

[2] The Complaint in the Underlying Action names as defendants the fictitious business names "Upgrade Marine" and "Upgrade Offroad," rather than Brian Perrin Marine, Inc., doing business as Upgrade Marine and Upgrade Offroad.

## **FIRST CAUSE OF ACTION**

### **(Declaratory Relief: No Duty to Defend or Indemnify)**

18.     RLI realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

19.     RLI seeks a judicial declaration of its rights and duties under the Marine Policy with respect to the Underlying Action, pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.

20.     RLI has no duty to defend or indemnify BP Marine DBA Upgrade Marine (sued in the Underlying Action as Upgrade Marine), BP Marine DBA Upgrade Offroad (sued in the Underlying Action as Upgrade Offroad) or Cardenas under the Marine Policy with respect to the Underlying Action because the Marine Policy does not provide coverage for claims for bodily injury stemming from the ATV Accident, as the Marine Policy explicitly excludes from coverage bodily injury resulting from "Non-Marine Work."

21.     Also, RLI has no duty to defend or indemnify BP Marine DBA Upgrade Offroad (sued in the Underlying Action as Upgrade Offroad) under the Marine Policy with respect to the Underlying Action because it is not an insured under the Marine Policy.

22.     The Specific Work Exclusion Endorsement of the Marine Policy, quoted above, negates coverage for injuries resulting from the ATV Accident.

23.     Defendants claim that the Marine Policy provides coverage for the ATV Accident, and that RLI has the duty to defend and indemnify in connection with the Underlying Action.

24.     An actual and justiciable controversy exists between RLI and Defendants concerning their respective rights, duties and obligations under the Marine Policy with respect to the Underlying Action.

25.     RLI contends and desires a judicial declaration and determination that:

(a)     The Marine Policy does not provide coverage for BP Marine

DBA Upgrade Marine, BP Marine DBA Upgrade Offroad and/or Cardenas in connection with the Underlying Action;

(b)    The Marine Policy does not provide coverage for BP Marine DBA Upgrade Marine because it is not an insured on the Marine Policy;

(c)    RLI has no duty to defend BP Marine DBA Upgrade Marine, BP Marine DBA Upgrade Offroad and/or Cardenas in connection with the Underlying Action; and

(d)    RLI has no duty to indemnify or pay any judgment or settlement on behalf of BP Marine DBA Upgrade Marine, BP Marine DBA Upgrade Offroad and/or Cardenas in connection with the Underlying Action.

26.    A judicial declaration is necessary and appropriate at this time so that RLI and Defendants may ascertain their rights, duties and obligations under the Marine Policy with respect to the Underlying Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff RLI Insurance Company prays for judgment against Defendants as follows:

1.    For a declaration regarding the rights, duties and obligations of RLI consistent with this pleading, including the specific finding and declaration that the Marine Policy does not provide coverage with respect to the Underlying Action;

2.    For a declaration regarding the rights, duties and obligations of RLI consistent with this pleading, including the specific finding and declaration that Policy does not provide coverage for BP Marine DBA Upgrade Marine because it is not an insured on the Marine Policy;

3.    For a declaration regarding the rights, duties and obligations of RLI consistent with this pleading, including the specific finding and declaration that RLI has no duty to defend BP Marine DBA Upgrade Marine, BP Marine DBA Upgrade Offroad and/or Cardenas in connection with the Underlying Action;

4.    For a declaration regarding the rights, duties and obligations of RLI

consistent with this pleading, including the specific finding and declaration that RLI has no duty to indemnify or pay any judgment or settlement on behalf of BP Marine DBA Upgrade Marine, BP Marine DBA Upgrade Offroad and/or Cardenas in connection with the Underlying Action;

   5.  For costs of suit incurred herein; and

   6.  For such other and further relief as the court deems just and equitable.

DATED:  May 8, 2023    BERKES CRANE SANTANA & SPANGLER LLP

      By:  /s/ STEVEN M. CRANE
        STEVEN M. CRANE
        LAURIE S. JULIEN
        Attorneys for Plaintiff,
        RLI INSURANCE COMPANY

6640105.DOCX

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff RLI Insurance Company hereby demands a jury trial of this action.

3

4    DATED:  May 8, 2023              BERKES CRANE SANTANA & SPANGLER LLP

5

6

7                    By: _____/s/ STEVEN M. CRANE_____

8                       STEVEN M. CRANE
                   LAURIE S. JULIEN

9                       Attorneys for Plaintiff,
                   RLI INSURANCE COMPANY

10

11   6640105.DOCX

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11    Case No.

COMPLAINT FOR DECLARATORY RELIEF [DEMAND FOR JURY TRIAL]

# EXHIBIT 1

# RLI

RLI Marine

250 Montgomery Street | Suite 720 | San Francisco, CA 94104
P: +1 (415) 981-1912

**Jim OBerg**
**Douglas K Smith Marine Ins Ser**
**1110 Scott Street**
**San Diego, CA 92106**
**joberg@dksmarineinsurance.com**

May 25, 2021

**Renewal of:**  EMA0100899

Re:  Brian Perrin Marine, Inc., Renewal Quote
      UPGRADE MARINE

Dear Jim:

Thank you for the opportunity to continue writing this risk. RLI Marine is pleased to offer the following quotation for the upcoming term. Coverages, terms, and conditions offered herein may be more restrictive than those requested.

This quote is valid until May 08, 2021 and needs to be bound prior to that date. Quote is contingent on the Broker/Agent being properly licensed within the risk state(s).

**Issuing Company:**  RLI Insurance Company, A+ Admitted

**Effective Date:**  05/08/2021          **Expiration Date:**  05/08/2022

**Main Coverage(s):**                   **Quote 1 Limit**

| Marine General Liability | | |
|---|---|---|
| Per Occurrence | $ | 1,000,000 |
| General Aggregate | $ | 2,000,000 |
| Products/Completed Ops | $ | 1,000,000 |
| Personal/Advertising Injury | $ | 1,000,000 |
| Premises Rented From Others | $ | 50,000 |
| Medical Payment | $ | 5,000 |
| Pollution | $ | 50,000 |
| Deductible | $ | 1,000 |
| **Premium** | **$** | **4,572.00** |

RLI Marine

Unscheduled Tools, Supplies, Furniture

| | | |
|---|---|---|
| Tools and Equipment (sublimit) | $ | 20,000 |
| Supplies and Inventory (sublimit) | $ | 20,000 |
| Furniture and Fixtures (sublimit) | $ | 10,000 |
| | | |
| Limit Each Accident or Occurrence | $ | 50,000 |
| Limit Any One Piece Not Scheduled | $ | 500 |
| Deductible | | 1% minimum $250 |
| **Premium** | **$** | **513.00** |

**Premium, Taxes, Fees, and Surcharges:**

| | | |
|---|---|---|
| Main Coverage (above) | $ | 5,085.00 |
| Terrorism (optional) | $ | 254.00 |
| Taxes, Fees, and Surcharges | $ | 0 |
| **Totals** | **$** | **5,339.00** |

**Specific Work Exclusions:**

Non-Marine Work (+)

+ **Definition of Non-Marine Work: The term "Non-Marine Work" means any work, repairs, operations or completed operations which are not specifically performed to a watercraft or to a watercraft's component parts including but not limited to its machinery, equipment, accessories, gear or motors.**

**This is Primary Insurance**

Arrowhead Lake Association, 870 CA-173, Lake Arrowhead, CA 92352

**Locations**

BRIAN PERRIN MARINE, INC., DBA: UPGRADE MARINE, 2608 SHELTER ISLAND DR. STE. #300, SAN DIEGO, CA 92106

Upgrade Marine, 955 Harbor Island Dr. #102, San Diego, CA 92101

**Coverage Forms:**

Coverage is subject to RLI Marine and AIMU policy forms including, but not limited to, any form(s) that may be listed below. Applicability of some forms are based on the coverages selected at time of binding.

**General Section**
Non-Stacking of Limits Endorsement

**Marine General Liabilities**
General Conditions

RLI Marine

Marine General Liability Coverage Part
Exclusion - Communicable Disease
Marine Liabilities Coverage Part - Watercraft Repairers Liability
Additional Insured(s) & Waiver of Subrogation (Blanket)
Pollution Buy-Back Endorsement (72 Hour Sudden And Accidental Basis)
This Insurance is Primary Insurance
Subcontractor's Warranty
Spec Work Exclusion And/Or Buy-Back Endorsement For Repair Ops
Breach of Contract Exclusion
Gas Freeing Exclusion
Mold, Mildew, and Fungus Exclusion
Location Supplementary Schedule
Marine Equipment Floater Schedule
Marine Equipment Floater Endorsement
Exclusion Of Loss Due To Virus Or Bacteria
Marine Equipment Floater Flood Exclusion


We trust you will find this quotation in order; however, should you have any questions, please do not hesitate to contact us. Thank you for the opportunity to quote your business.

Best Regards,

Michael Amitrani
Underwriter
P:  +1 (415) 981-1912
Michael.Amitrani@rlicorp.com

**RLI**®

# NOTICE

## OFFER OF FEDERAL TERRORISM INSURANCE COVERAGE
## AND DISCLOSURE OF PREMIUM

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, (the "Act") that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*. Section 102(1) of the Act defines the term "act of terrorism" as any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The acts of terrorism as defined in Section 102(1) of the Act shall be sometimes referred to herein as "certified acts of terrorism."

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

☐  **I hereby elect to purchase coverage for certified acts of terrorism for a prospective premium of $ 254.00            .**

☐  **I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.**

**(PLEASE NOTE: IF YOU REJECT the Offer Of Federal Terrorism Insurance Coverage, that rejection will not apply to the limited extent that relevant state law requires coverage for fire losses resulting from acts of terrorism certified under the Act. Two percent (2%) of the premium charged for the fire peril will be allocated to fire following terrorism in those jurisdictions that require such coverage be provided, even if you opt not to purchase full terrorism coverage. This amount is part of, and not in addition to, the overall premium charged for this insurance policy.)**

_____
Policyholder/Applicant's Signature

Policy Number

_____
RLI Insurance Company

_____
Print Policyholder/Applicant's Name

Insurance Company

_____
Date

UW 20313P (01/15)

RLI Marine

## WATERCRAFT REPAIRERS LIABILITY APPLICATION

**The attached Quote is based on the following Application information, as well as the limits and deductibles selected during the Quote process. If the Application or Quote information is inaccurate, you are required to provide updated information so a revised quote, if needed, can be issued.**

Producer:            Douglas K Smith Marine Ins Ser

### Contact Information

Firm/Company's Full Name:    Brian Perrin Marine, Inc.
Firm DBA:                     Upgrade Marine, DBA: BP Solar Electric
Location Address:             2608 Shelter Island Dr., Ste #300

      City:            San Diego
      State:           CA
      Zip Code:        92106
      County:          San Diego
      Country:         UNITED STATES
      Telephone:       (619) 518-5685
      eMail:           upgrademarine@gmail.com

Mailing Address:              2608 Shelter Island Dr., Ste #300

      City:            San Diego
      State:           CA
      Zip Code:        92106
      Country:         UNITED STATES

Anticipated Effective Date:   05/08/2021

### Financial History

### Bankruptcy Information

Is the Applicant and/or affiliated companies currently involved in bankruptcy proceedings or have they been in the past 20 years?          ☐ Yes  ☒ No

Indicate last year bankruptcy proceedings were filed within the past 20 years:

Please advise of the detailed reason for bankruptcy in space provided:

### Previous Denials

Has any insurance been denied, cancelled, or non-renewed on this Applicant and/or affiliated companies in the last 5 years?          ☐ Yes  ☒ No

Explain reasons in space provided:

### History

Indicate number of years entity and/or company has been in operation (if less than 1, select 0):    10+

Is Coverage being applied for currently in place?    ☒ Yes  ☐ No

Please explain lack of coverage:


Number of years Applicant has operated in this type of trade (if less than 1, select 0):    10+

Indicate years entity and/or company has been under current management:    10+

Please list relevant certifications, training, and experience in space provided (if none, please enter none):

NONE

## Diving and Transport

### Diving Operations

Are any diving operations performed?    ☐ Yes  ☒ No

Enter maximum dive depth in meters:

Number of divers, or 'Owner(s) Only' (if applicable):

Describe diving operations:


### Vessel Transport

Does Applicant transport any vessels by vehicle?    ☐ Yes  ☒ No

**Enter all values in space provided regarding vessels transported by vehicle.**

Are all special permits for moves based on state requirements obtained?    ☐ Yes  ☐ No

Maximum number of vessels towed behind a single vehicle at any one time:

Maximum number of vessels towed per year:

Maximum length (in feet) of any vessel towed:

Maximum value of any single vessel moved by vehicle:

Maximum distance (in miles) vessels towed:

## Location Information

Please indicate the number of yards/premises/locations rented, owned or leased by Applicant as an office or where work is performed.    2

**Please list any yard/premise/location rented/owned/leased by Applicant as an office or where work is performed:**

**Location Detail:**

Property Type:                Rented/Leased

Location Type:                Both Office and Work Performed

Location Name & Address:    BRIAN PERRIN MARINE, INC., DBA: UPGRADE MARINE
                           2608 SHELTER ISLAND DR. STE. #300
                           SAN DIEGO, CA 92106

**Location Values:**

Maximum number of vessels at location at any given time:                    0

Maximum values at location at any given time:

**Security Measures:**

☐ Fire Alarmed          ☐ Guard Dogs                              ☒ Lighted          ☐ No Yard/Everything Locked Indoors
☐ Security Alarmed      ☐ Security Guard/Watchman (non-working hours)          ☒ Yard Fenced & Gated & Locked
☐ None of the Above

---

**Location Detail:**

Property Type:                Rented/Leased

Location Type:                Office Location Only

Location Name & Address:    Upgrade Marine
                           955 Harbor Island Dr. #102
                           San Diego, CA 92101

**Location Values:**

Maximum number of vessels at location at any given time:                    0

Maximum values at location at any given time:                               $0

**Security Measures:**

☐ Fire Alarmed          ☐ Guard Dogs                              ☒ Lighted          ☐ No Yard/Everything Locked Indoors
☐ Security Alarmed      ☒ Security Guard/Watchman (non-working hours)          ☐ Yard Fenced & Gated & Locked
☐ None of the Above

## General and Gas Freeing Operations

### General Work Information

Maximum value of vessel Applicant does work on:          $1,500,000

Average value of vessel Applicant does work on:          $115,000

Does Applicant fabricate/manufacture anything?          ☐ Yes  ☒ No

Describe types of products in space provided:

**Gas Freeing Operations**

Are any Gas Freeing operations performed?                                    ☐ Yes  ☒ No

**Enter values related to Gas Freeing operations.**

Number of vessels Gas Freed per year:

Does the Applicant employ one of the following:
☐ Full-time Gas Freeing Chemist                    ☐ Outside Contracted Chemist (requires proof of GL)
☐ Outside Contracted Chemist (no proof of GL)      ☐ No Chemist Used

**Financial Information**

Estimated gross receipts for coming term:                    $375,000

Number of Employees:                                          4

Estimated payroll for coming term:                           $205,000

**Work Information**

**Percentage of Work Performed by Self and Others**

| Description: | Percentage: |
|---|---|
| By you and your Employees | 95% |
| Labor Pools, Leased Workers, Temporary Employees | |
| Sub-Contractors | 5% |
| Union Longshoremen | |
| 1099's | |

Does the sub-contractor policy name and waive the Applicant?          ☒ Yes  ☐ No

**Percentage of Work Based on Receipts**

**Enter percentage of receipts based on work performed on vessel types.**

| Description: | Percentage: |
|---|---|
| Private Pleasure Watercraft | 100% |
| Commercial Watercraft | |
| Other Non-Watercraft related work | |

Describe Non-Watercraft related work:

**Specific Work Exclusions**

Non-Marine Work

**\*Definition of Non-Marine Work: The term "Non-Marine Work" means any work, repairs, operations or completed operations which are not specifically performed to a watercraft or to a watercraft's component parts including but not limited to its machinery, equipment, accessories, gear or motors.**

**This is Primary Insurance**

Arrowhead Lake Association, 870 CA-173, Lake Arrowhead, CA 92352

**Type(s) of Vessels Worked on**

**Description:**                                                                                   **Percentage:**

Aluminum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2%

Ferro Metal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Fiberglass/Composite Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94%

Steel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2%

Wood . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2%

**Work Performed**

**The total work performed should equal the amount entered for Estimated Gross Receipts ($375,000)**

| Description: | Percentage: | Max Work ($375,000 Total): |
|---|---|---|
| Asbestos removal/Abatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Boiler repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Bottom cleaning/scrubbing - including zinc replacement . . . . . . . . . . . . . . . . . . | 5% | $18,750 |
| Cleaning or detailing work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10% | $37,500 |
| Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Disposal of hazardous materials, including, but not limited to dredge spoil . . . . . | | |
| Electrical - component repair and installation . . . . . . . . . . . . . . . . . . . . . . . . . . . | 60% | $225,000 |
| Electrical - work (wiring, etc.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10% | $37,500 |
| Fiberglass repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Fuel cleaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Glazier of yachts/window install, remove and reset . . . . . . . . . . . . . . . . . . . . . . | | |
| Hauling or launching . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Hull - steel work; burning and welding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| HVAC/Refrigeration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Hydraulic systems and winch repairs and installation, stabilizers and steering . . | 5% | $18,750 |
| Insulation/Lagging . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Machinery repair - Engine work or heavy machinery repair/installation . . . . . . . . | | |
| Machinery repair - Minor (not major engine repair related) . . . . . . . . . . . . . . . . . | 5% | $18,750 |
| Marine carpentry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Painting - Interior painting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Painting - Vessel Painting/Bottom Coating . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Plumbing - installation and repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5% | $18,750 |
| Reduction gear and/or shaft and/or propeller repair . . . . . . . . . . . . . . . . . . . . . . | | |
| Rigging work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Sail/Canvas Repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Sandblasting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Shrink wrapping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Upholstery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Varnish - refinish of woods and brightworks . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Winterization of watercraft . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |

**Enter any other work that does not fit in the above categories.**

| Description: | Percentage: | Max Work: |
|---|---|---|

**Optional Coverages**

**Tools/Equipment, Supplies/Inventory and/or Furniture/Fixtures**

Include Tools and Equipment Coverage?                                                       ☒ Yes  ☐ No

See Quote Letter for Limits and Deductible

**Schedule of Items - We require that items valued at or over the "Limit Any One Unscheduled Item" are scheduled. If those items are not scheduled, they will not be covered.**

**Hired and Non-Owned Auto Information**

Include Hired and Non-Owned Liability Coverage?                                             ☐ Yes  ☒ No

Number of employees/partners/members using their personal vehicles:

Number of above employees/partners/members under age of 25 using their vehicles:

What are vehicles being used for?

How often do employees/partners/members use these private vehicles?

Number of company vehicles owned by Applicant? (if none enter 0)

Does Applicant obtain and check MVRs annually for employees who use their own vehicles,     ☐ Yes  ☐ No
and personally verify insurance state minimum requirements?

**Stop Gap Information**

The states/territories of ND, OH, PR, WA, WY and US Virgin Islands don't provide employers' liability     ☐ Yes  ☒ No
coverage as part of workers' compensation coverage. Does Applicant work or have locations in any
of these states/territories and want Stop Gap coverage?

Number of employees to which Stop Gap applies:                                              0

**Indicate those states/territories in which Applicant needs Stop Gap Coverage.**

☐ North Dakota    ☐ Ohio    ☐ Puerto Rico    ☐ Washington    ☐ Wyoming    ☐ US Virgin Islands

**Hull and P&I Information**

Hull and P&I - Does the Applicant own any Watercraft?                                       ☐ Yes  ☒ No
Does the Applicant require coverage through RLI?                                            ☐ Yes  ☒ No
Is P&I Coverage placed elsewhere?                                                          ☐ Yes  ☒ No
Please indicate the coverages required:

**Please list vessels to be covered.**

| Vessel Usage | Length (ft) | Type | Value |
|---|---|---|---|

**Additional Insureds**

**Loss Payees**

**Supplemental Named Insureds**

**NOTICE TO APPLICANT FOR INSURANCE - FRAUD WARNING**

**THIS NOTICE IS PART OF YOUR APPLICATION FOR COMMERCIAL INSURANCE. FOR YOUR PROTECTION VARIOUS STATE LAWS REQUIRE THE FOLLOWING NOTICE:**

**GENERAL FRAUD STATEMENT:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NEW YORK: SUBSTANTIAL] CIVIL PENALTIES." (NOT APPLICABLE IN COLORADO, FLORIDA, HAWAII, MASSACHUSETTS, NEBRASKA, OHIO, OKLAHOMA, OREGON, VERMONT OR WASHINGTON; IN THE DISTRICT OF COLUMBIA, LOUISIANA, MAINE, TENNESSEE, VIRGINIA INSURANCE BENEFITS MAY ALSO BE DENIED.)

**STATE SPECIFIC FRAUD STATEMENTS**

IN **MASSACHUSETTS**, **NEBRASKA**, **OREGON** AND **VERMONT**, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND MAY SUBJECT THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

IN ADDITION, IN **CALIFORNIA**, ANY PERSON WHO KNOWINGLY MAKES AN APPLICATION FOR MOTOR VEHICLE INSURANCE COVERAGE CONTAINING ANY STATEMENT THAT THE APPLICANT RESIDES OR IS DOMICILED IN THIS STATE WHEN, IN FACT, THAT APPLICANT RESIDES OR IS DOMICILED IN A STATE OTHER THAN THIS STATE, IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

THIS NOTICE IS PART OF YOUR APPLICATION FOR COMMERCIAL INSURANCE. FOR YOUR PROTECTION **COLORADO** LAW REQUIRES THE FOLLOWING NOTICE: **FRAUD WARNING:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSES OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

IN THE **DISTRICT OF COLUMBIA**, **WARNING:** IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS, IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

IN **FLORIDA**, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THIS NOTICE IS PART OF YOUR APPLICATION FOR COMMERCIAL INSURANCE. FOR YOUR PROTECTION **HAWAII** LAW REQUIRES YOU BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT OR BOTH.

FOR YOUR PROTECTION **OHIO** LAW REQUIRES YOU BE INFORMED THAT ANY PERSON WITH INTENT TO DEFRAUD OR KNOWING THAT HE / SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

FOR YOUR PROTECTION **OKLAHOMA** LAW REQUIRES THE FOLLOWING NOTICE: **WARNING:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY, CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

FOR YOUR PROTECTION **RHODE ISLAND** LAW REQUIRES YOU BE INFORMED THAT ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

IN **WASHINGTON**, IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE BENEFITS.

**Confirmation**

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, and denial of insurance benefits.

The foregoing statements made and signed by the applicant and/or his duly authorized agent are warranted by him to be a correct and true basis on which insurance may be granted, but in no way bind the applicant to accept the quotation or the insurers to accept the risk.

_____          _____
Applicant Signature                                     Date


_____          _____
Agent/Broker Signature                                  Date

# EXHIBIT 2

# CERTIFICATION

I, Scott R. Ostericher, do hereby certify that I am the AVP, Claim Operations of RLI Insurance Company, a corporation organized and existing under the laws of the State of Illinois, and that to the best of my knowledge the attached is a true and correct copy of Policy No. EMA0100899 (05/08/2021 – 05/08/2022) issued to Named Insured Brian Perrin Marine, Inc Dba Upgrade Marine Dba BP Solar Electric.

Scott R. Ostericher
cn=Scott R. Ostericher, o=RLI/Mt. Hawley/CBIC, ou=Claim Department,
email=Scott.Ostericher@rlicorp.com, c=US
To the best of my knowledge, the attached is a true and correct copy of this policy.
Peoria, Illinois
2023.05.05 13:36:54 -05'00'

_____
Scott R. Ostericher, AVP, Claim Operations, Claims
RLI Insurance Company



**RLI Insurance Company**

9025 N. Lindbergh Drive • Peoria, IL 61615 • (309) 692-1000

A stock insurance company, herein called the Company.

# POLICY DECLARATIONS

Policy Number: EMA0100899

Renewal of: EMA0100899

Broker Reference Number:

**"NAMED INSURED" AND ADDRESS:**

Brian Perrin Marine, Inc.

DBA: Upgrade Marine, DBA: BP Solar Electric

2608 Shelter Island Dr., Ste #300

San Diego, CA 92106

**AGENT/BROKER:**

86532 Douglas K Smith Marine Ins Ser

1110 Scott Street

San Diego, CA 92106

**POLICY PERIOD** From ___05/08/2021___ To ___05/08/2022___ at 12:01 AM Standard Time at your mailing address shown above.

In consideration of the premium as outlined below and subject to all the terms of this Policy, this Company agrees to provide the insurance coverage as stated in the attached Policy. This premium may be subject to adjustment.

| Coverage Part | Premium |
|---|---|
| Marine General Liabilities | $▮▮▮ |
| Watercraft Repairers Liability | Included |
| Marine Equipment Floater | $▮▮▮ |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| See attached Tax, Fee & Surcharge Schedule (OMP 900) if applicable. | Taxes/Fees/Surcharges: N/A |
|---|---|
| **Premium payable at inception unless Payment Schedule (OMP 113) applies.** | **Total Premium:** $▮▮▮ |
| | **Minimum Premium:** $▮▮▮ |

**ADDITIONAL FORMS AND ENDORSEMENTS – MADE PART OF THIS POLICY AT TIME OF ISSUE**

See Attached Schedule of Endorsements (OMP 2150)

Authorized Signature

OMP 100 (07/09)

INSURED

Policy Number:  EMA0100899

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE. IF LISTED UNDER A SPECIFIC SECTION, THE FORM APPLIES ONLY TO THAT SECTION AND DOES NOT CHANGE TERMS OR CONDITIONS FOR ANY OTHER SECTION. FORMS LISTED UNDER THE GENERAL SECTION APPLY TO ALL SECTIONS OF THE POLICY.

**General Section**

| | |
|---|---|
| CPR 2197 (03/08) | Terrorism Exclusion |
| OMH 686 (02/09) | Non-Stacking of Limits Endorsement |
| ILF 0001C (04/16) | Signature Page - Commercial Lines |

**MGL Section**

| | |
|---|---|
| OMGL 101 (02/12) | General Conditions |
| OMGL 102 (03/13) | Marine General Liability Coverage Part |
| OMH 712 (06/20) | Exclusion - Communicable Disease |
| OMGL 112 (09/20) | Marine Liabilities Coverage Part - Watercraft Repairers Liability |
| OMGL 624 (11/07) | Additional Insured(s) & Waiver of Subrogation (Blanket) |
| OMGL 604 (06/10) | Pollution Buy-Back Endorsement (72 Hour Sudden And Accidental Basis) |
| OMGL 608 (08/05) | This Insurance is Primary Insurance |
| OMGL 633 (03/09) | Subcontractor's Warranty |
| OMGL 635 (03/13) | Spec Work Exclusion And/Or Buy-Back Endorsement For Repair Ops |
| OMP 659 (03/13) | Breach of Contract Exclusion |
| OMP 602 (08/05) | Gas Freeing Exclusion |
| OMP 605 (04/07) | Mold, Mildew, and Fungus Exclusion |
| OMP 657 (03/13) | Location Supplementary Schedule |
| OMP 653 (04/17) | Marine Equipment Floater Schedule |
| OMP 652 (07/16) | Marine Equipment Floater Endorsement |
| OMH 714 (06/20) | Exclusion Of Loss Due To Virus Or Bacteria |
| OMP 660 (05/13) | Marine Equipment Floater Flood Exclusion |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMP 2150 (02/07)

Page  1 of 1

INSURED

Policy Number: EMA0100899                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION

We will not pay for loss, damage, cost or expense caused directly or indirectly by "terrorism" including "certified acts of terrorism," as defined in the Terrorism Risk Insurance Act, as amended, unless specifically provided by endorsement to this policy or any action taken to control, prevent, or suppress terrorism. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to this loss.

1.  The following definition is added and applies under this endorsement wherever the term "terrorism" is used.

    "Terrorism" means activities against persons, organizations or property of any nature:

    **A.**  That involve the following or preparation for the following:

        **1.**  Use or threat of force or violence; or

        **2.**  Commission or threat of a dangerous act; or

        **3.**  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **B.**  When one or both of the following applies:

        **1.**  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        **2.**  It appears that the intent is to intimidate or coerce a government, or to further polictical, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2.  Neither the terms of this endorsement nor the terms of any other terrorism endorsement attached to this policy provide coverage for any loss that would otherwise be excluded by this policy under:

    **A.**  Exclusions that address war, military action, or nuclear hazard; or

    **B.**  Any other exclusion.

3.  The absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this policy under:

    **A.**  Exclusions that address war, military action, or nuclear hazard; or

    **B.**  Any other exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: EMA0100899                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-STACKING OF LIMITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

If this Policy and any other policy (excluding any Excess Liability, Bumbershoot Liability, or Umbrella Liability policies) issued to you by us or any company affiliated with us apply to the same occurrence, the maximum Limit of Insurance for each Limit under all coverage forms and policies combined shall not exceed the highest applicable Limit of Insurance available under any one coverage form or policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number: EMA0100899                                          RLI Insurance Company

# MARINE GENERAL LIABILITY DECLARATION

**Limits of Insurance:**

$ 1,000,000 _____ Limit Each Occurrence including Supplementary Payments, Combined Single Limit All Coverages
$ 2,000,000 _____ General Aggregate Limit
$ 1,000,000 _____ Products Hazard or Completed Operations Hazard Aggregate Limit
$ 1,000,000 _____ Personal Injury and Advertising Injury Aggregate Limit
$ 50,000 _____ Damage to Premises Rented to You Limit
$ 5,000 _____ Medical Expense Limit

**Deductible:**

$ 1,000 _____ Any One Accident or Occurrence, Except Pollution
$ 1,000 _____ Any One Accident or Occurrence per Each Pollution Claim

**Business Descriptions:**

Marine Artisan / Ship Repairer

**Coverage Subject to Reporting per General Conditions:**

| Coverage | Premium Basis | Rate | Per |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Total Annual Estimated Premium (All Coverages):**                $ ███████
**Deposit Premium:**                                               N/A
**Minimum Premium:**                                               N/A
**Total Premium Due (Deposit plus Premium for other coverages):**  $ ███████

**Locations:**

| Coverage Part | Location |
|---|---|
| All | Insured address per declaration page (see also Location |
|  | Supplemental Schedule if attached) |

OMGL 110 (02/07)                                                      Page  1 of 1

INSURED

Policy Number: EMA0100899                                                                    RLI Insurance Company

# GENERAL CONDITIONS

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the **U. Definitions** section of the **GENERAL CONDITIONS**.

**A. Who Is An Insured**

    **1.** If you are designated in the Declarations as:

        **a.** An individual, you and your spouse or you and your partner by civil union are insureds, but only with respect to the conduct of a business of which you are the sole owner.

        **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

        **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

        **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

        **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

    **2.** Each of the following is also an insured:

        **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

            **(1)** "Bodily injury" or "personal and advertising injury":

                **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

                **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1) (a)** above;

                **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1) (a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by,

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the ninetieth (90th) day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** **SECTION 1 – COVERAGE A** and **SECTION 2 – MARINE LIABILITIES** do not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** **SECTION 1 – COVERAGE B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**B. Limits Of Insurance**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits";

  **d.** Watercraft involved; or

  **e.** Coverage forms involved, including any supplemental coverages or coverage extensions provided by endorsements;

  **f.** Supplementary payments.

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  "Medical expenses" under **SECTION 1 – COVERAGE C**;

    b.  Damages under **SECTION 1 – COVERAGE A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c.  Damages under **SECTION 1 – COVERAGE B**; and

    d.  Damages under **SECTION 2 – MARINE LIABILITIES**.

    e.  Damages under any supplemental coverages or coverage extensions provided by endorsements to this Policy.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under **SECTION 1 – COVERAGE A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4.  Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under **SECTION 1 – COVERAGE B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under **SECTION 1 – COVERAGE A**; and

    b.  "Medical expenses" under **SECTION 1 – COVERAGE C**; and

    c.  Damages under **SECTION 2 – MARINE LIABILITIES**; and

    d.  Supplementary Payments

    because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6.  Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under **SECTION 1 – COVERAGE A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to **5.** above, the Medical Expense Limit is the most we will pay under **SECTION 1 – COVERAGE C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**C.  Deductibles**

1.  Our obligation under the insurance provided, to pay damages and "supplementary payments" on your behalf applies only to the amount of damages and "supplementary payments" in excess of any deductible amounts stated in the Declarations or attached Schedule(s).

2.  The deductible amount applies under all coverages combined and to all applicable damages including supplementary payments because of any injury or damage as the result of any one "occurrence," regardless of the number of persons or organizations who sustain damages because of that "occurrence." The deductible amount does not apply to the medical expense limit provided in this Policy.

3. The terms of this insurance, including those with respect to:

    a. Our right and duty to defend any "suits" seeking those damages; and

    b. Your duties in the event of an "occurrence," claim, or "suit"

apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit," and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## D. Cancellation

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium.

    b. Sixty (60) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## E. When We Do Not Renew

If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than sixty (60) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## F. Changes

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

## G. Examination Of Your Books And Records

We may examine, audit and make copies of your books and records as they relate to this Policy at any time during the policy period and up to three (3) years afterward.

## H. Inspections And Surveys

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of you, your workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**I.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**J.  Premiums**

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

**K.  Premium Adjustment**

1.  We will compute all premiums for this Policy in accordance with our rules and rates.

2.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

3.  a.  The premium shown on the Declarations as advance premium is a deposit premium. You warrant that complete and accurate records of the operations covered by applicable Coverage Form(s) will be kept and such records will be open to examination by us or our representatives at any time during business hours.

b.  Within ten (10) days after the end of each "reporting period," you must file with us a report containing a complete record of operations and the total amount of the applicable Premium Base (as designated on the Declarations) for that "reporting period." The earned premium is to be computed by using the applicable rate multiplied by the amount of the Premium Base and applied against the Advance Premium until the same is exhausted. When the Advance Premium is exhausted, all further earned premiums are due and payable to us at the time of filing the report on which the premium is due.

c.  If this insurance is cancelled, you must report the total Premium Base up to and including the date of cancellation.

**L. Minimum Premium**

You must pay at least the minimum premium shown in the applicable Declarations, except in the event of cancellation of this Policy by us. The minimum premium will only apply when the computed premium is less than the minimum premium.

**M. Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Policy.

**N. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

1. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   a. How, when and where the "occurrence" or offense took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence" or offense.

2. If a claim is made or "suit" is brought against any Insured, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

3. You and any other involved Insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**O. Legal Action Against Us**

No person or organization has a right under this Policy:

1. To join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

2. To sue us under this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**P.  Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under this Policy, our obligations are limited as follows:

**1.  Primary Insurance**

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

**2.  Excess Insurance**

This insurance is excess over:

**a.**  Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)**  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)**  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(3)**  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(4)**  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **G.** of **SECTION 1 – COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

**b.**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under this Policy to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**a.**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**b.**  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

**3.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**Q. Representations**

By accepting this Policy, you agree:

**1.** The statements in the Declarations are accurate and complete;

**2.** Those statements are based upon representations you made to us; and

**3.** We have issued this Policy in reliance upon your representations.

**R. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

**1.** As if each Named Insured were the only Named Insured; and

**2.** Separately to each insured against whom claim is made or "suit" is brought.

**S. Financial Responsibility**

This Policy does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal, state or local law. It is a condition of this Policy that it shall not be submitted to the United States Coast Guard or any federal, state or local agency as evidence of financial responsibility. We do not consent to be guarantors.

**T. Transfer Of Rights Of Recovery Against Others To Us**

If the Insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**U. Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

    **a.** A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

    **c.** All other parts of the world if the injury or damage arises out of:

        **(1)** Goods or products made or sold by you in the territory described in **a.** above;

        **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

        **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

INSURED

e.  An elevator maintenance agreement;

f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1)  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3)  Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11.  "Loading or unloading" means the handling of property:

a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b.  While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

12.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.  Vehicles maintained for use solely on or next to premises you own or rent;

c.  Vehicles that travel on crawler treads;

d.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1)  Power cranes, shovels, loaders, diggers or drills; or

(2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **(1)** Equipment designed primarily for:

            **(a)** Snow removal;

            **(b)** Road maintenance, but not construction or resurfacing; or

            **(c)** Street cleaning;

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include "bodily injury" or "property damage" arising out of:

        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

    **b.**   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

    **a.**   Means:

        **(1)**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**  You;

            **(b)**  Others trading under your name; or

            **(c)**  A person or organization whose business or assets you have acquired; and

        **(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**   Includes:

        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**  The providing of or failure to provide warnings or instructions.

    **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.**   Means:

        **(1)**  Work or operations performed by you or on your behalf; and

        **(2)**  Materials, parts or equipment furnished in connection with such work or operations.

    **b.**   Includes:

        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

        **(2)**  The providing of or failure to provide warnings or instructions.

## V. Supplementary Payments

Applicable only to **SECTION 1 – COVERAGES A & B** and **SECTION II**.

"Supplementary Payments" as defined in this Policy are included in the limit of this Policy and are not in addition to those limits. Refer to the **GENERAL CONDITIONS – B. Limits Of Insurance**.

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a.  All expenses we incur (including attorney fees and all other litigation expenses).

    b.  Up to two hundred fifty dollars ($250) for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d.  All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to two hundred fifty dollars ($250) a day because of time off from work.

    e.  All costs taxed against the insured in the "suit."

    f.  Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    These payments will reduce the limits of insurance.

2.  If we defend an Insured against a "suit" and an indemnity of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

    a.  The "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b.  This insurance applies to such liability assumed by the Insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

    d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

    e.  The indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

    **f.**   The indemnitee:

        **(1)**  Agrees in writing to:

            **(a)**  Cooperate with us in the investigation, settlement or defense of the "suit";

            **(b)**  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            **(c)**  Notify any other insurer whose coverage is available to the indemnitee; and

            **(d)**  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        **(2)**  Provides us with written authorization to:

            **(a)**  Obtain records and other information related to the "suit"; and

            **(b)**  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **II.B.2.** of **SECTION 1 – COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an Insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.**   We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.**   The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## W.  Additional Conditions

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

Policy Number: EMA0100899                                                    RLI Insurance Company

# SECTION 1

# MARINE GENERAL LIABILITY COVERAGE PART

## COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**I.   INSURING AGREEMENT**

   **A.**   We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   But:

   **1.**   The amount we will pay for damages is limited as described in **GENERAL CONDITIONS – B. Limits of Insurance**; and

   **2.**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A** or **B** or **Medical Expenses** under **COVERAGE C** or **Supplementary Payments**.

   **B.**   This insurance applies to "bodily injury" and "property damage" only if:

   **1.**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **2.**   The "bodily injury" or "property damage" occurs during the policy period; and

   **3.**   Prior to the policy period, no Insured listed under **GENERAL CONDITIONS – A. Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed Insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **C.**   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Insured listed under **GENERAL CONDITIONS – A. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **D.**   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under **GENERAL CONDITIONS – A. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **1.**   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **2.**   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **3.**   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

INSURED

**E.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

## II. EXCLUSIONS

This insurance does not apply to:

### A. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### B. Contractual Liability

"Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**1.** That the Insured would have in the absence of the contract or agreement; or

**2.** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of "bodily injury" or "property damage," provided:

    **a.** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **b.** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### C. Liquor Liability

"Bodily injury" or "property damage" for which any Insured may be held liable by reason of:

**1.** Causing or contributing to the intoxication of any person;

**2.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**3.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### D. Workers' Compensation And Similar Laws

Any obligation of the Insured under a workers' compensation, United States Longshoremen's and Harbor Workers Compensation Act, Jones Act, Death on the High Seas Act, General maritime law, Federal Employers' Liability Act, disability benefits or unemployment compensation law or any similar law.

### E. Employer's Liability

"Bodily injury" to:

**1.** An "employee" of the Insured arising out of and in the course of:

INSURED

    **a.**  Employment by the Insured; or

    **b.**  Performing duties related to the conduct of the Insured's business; or

**2.**  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **1.** above.

This exclusion applies:

**1.**  Whether the Insured may be liable as an employer or in any other capacity; and

**2.**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

**F.**  **Pollution Liability**

**1.**  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **a.**  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured;

    **b.**  At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

    **c.**  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom you may be legally responsible; or

    **d.**  At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

        **(1)**  If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        **(2)**  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **a.** and **d. (1)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**2.**  Any loss, cost or expense arising out of any:

    **a.**  Request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    **b.**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**G.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned, leased, rented, chartered, or operated by or rented or loaned to any Insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned, leased, rented, chartered or operated by or rented or loaned to any Insured.

This exclusion does not apply to:

**1.**  A watercraft while ashore on premises you own or rent;

**2.**  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

**3.**  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**4.**  "Bodily injury" or "property damage" arising out of:

   **a.**  The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   **b.**  The operation of any of the machinery or equipment listed in Paragraph **F. 2.** or **F. 3.** of the definition of "mobile equipment."

**H.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**1.**  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any Insured; or

**2.**  The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**I.  War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

**1.**  War, including undeclared or civil war;

**2.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.**  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**J.  Damage To Property**

"Property damage" to:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3. Property loaned to you;

4. Personal property in the care, custody or control of the Insured;

5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **1.**, **3.** and **4.** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **GENERAL CONDITIONS – B. Limits Of Insurance**.

Paragraph **2.** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **3.**, **4.**, **5.** and **6.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **6.** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

### K. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### L. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### M. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### N. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **C.** through **N.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **GENERAL CONDITIONS – B. Limits of Insurance**.

**O. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

**P. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Q. Asbestos**

Any liability for bodily injury or property damage, including loss of use thereof, arising out of the manufacturing, processing, handling, distribution, sale, application, removal or use of asbestos, or asbestos related product(s).

**R. Directors And Officers**

Any liability to a director and/or officer of the Named Insured by reason of any wrongful act committed in their capacity as a director and/or officer of the Named Insured.

It is further agreed that the term "wrongful act" shall be defined as, but not limited to, any breach of duty, neglect, error, misstatement, misleading statement, omission or other act actually done or attempted by a director and/or officer claimed against them solely by reason of their capacity as such.

**S. Employment-Related Practices**

"Bodily injury" arising out any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions or consequential "bodily injury" as a result of the above.

This exclusion applies whether the Named Insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**T. Fiduciary Liability**

To any liability or to any claim or claims arising out of fiduciary liability.

**U. Health Hazard**

"Bodily injury" or "property damage" arising out of the following:

INSURED

1. Polychlorinated Biphenyl (PCB) – "Bodily injury" or "personal injury" or cause of, damage to or loss of use of property directly or indirectly caused by Polychlorinated Biphenyl. The term PCB as used in this exclusion means Polychlorinated Biphenyl or any derivative thereof.

2. "Bodily injury" or "personal injury" or cause of, damage to or loss of use of property directly or indirectly caused by silica.

3. Lead – "Bodily Injury" or "personal injury" or cause of, damage to or loss of use of property directly or indirectly caused by lead and/or lead related compounds and/or lead derivatives.

It is further agreed that this Policy shall not apply to any liability for "bodily injury" or "personal injury" and/or "property damage" made by or on behalf of any person or persons directly or indirectly on account of continuous intermittent or repeated exposures to, ingestion, inhalation, or absorption of any substances, materials, products, wastes or emissions, noise or environmental disturbance where the Named Insured is or may be liable for any reason including, but not limited to, as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by or on behalf of the Named Insured of such substances, materials, products, wastes or emissions, noise or environmental disturbance.

## V. Occupational Disease

This insurance shall not cover any liability, loss, damage or expense as regards "bodily injury" or "personal injury" (fatal or non-fatal) resulting from occupational disease sustained by any employee of the Named Insured.

## W. Professional Liability/Errors Or Omissions

To any liability or to any claim or claims arising out of a breach of professional duty by reason of any negligent act, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of the Named Insured in the conduct of any of the Named Insured's business activities. Professional services includes, but is not limited to, the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering, or data processing services.

## X. ERISA/SEC

1. "Bodily injury" or "property damage" arising out of any duties or responsibilities imposed upon the Insured by the Employee Retirement Income Security Act of 1974, Public Law 93-406 or any amendment to addition thereto.

2. Any liability based upon or arising out of any intentional or unintentional violation of any provision of any federal or state securities law, including but not limited to the Securities Act of 1933 or the Securities Exchange Act of 1934 or any amendments or addition thereto.

## Y. Nuclear

Any nuclear incident, reaction, radiation, or any radioactive contamination, whether controlled or uncontrolled, and whether the loss, damage, liability or expense be approximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the risks and liabilities insured under this Policy, and whether based on your negligence or otherwise.

## Z. Punitives

Damages of the following types:

1. Civil, criminal, administrative or other fines or penalties;

2. Any portion of a judgment or award that represents a multiple of compensatory amounts, liquidated damages or punitive or exemplary damages;

3. Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than monetary amounts; or

4. Judgments or awards because of acts deemed uninsurable by law.

**AA. Chemical, Biological, Bio-Chemical, And Electromagnetic Exclusion Clause**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

**BB. Extended Radioactive Contamination Exclusion Clause (March 1, 2003)**

1. In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

   1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

   1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

   1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

   1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**Radioactive Contamination Exclusion Clause (U.S.A. Endorsement)**

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses **1.1**, **1.2**, and **1.4** of the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

**CC. U.S. Economic And Trade Sanctions Clause**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

## COVERAGE B: PERSONAL AND ADVERTISING INJURY LIABILITY

**I. INSURING AGREEMENT**

**A.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

But:

1. The amount we will pay for damages is limited as described in **GENERAL CONDITIONS – B. Limits Of Insurance**; and

2. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A** or **B** or **Medical Expenses** under **COVERAGE C** or **Supplementary Payments**.

**B.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**II. EXCLUSIONS**

This insurance does not apply to:

**A. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**B. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**C. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**D. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the Insured.

**E. Contractual Liability**

"Personal and advertising injury" for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.

**F. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**G. Quality Or Performance of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**H.  Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**I.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**J.  Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an Insured whose business is:

**1.**  Advertising, broadcasting, publishing or telecasting;

**2.**  Designing or determining content of websites for others; or

**3.**  An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14. a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**K.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

**L.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**M.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**N.  Pollution-Related**

Any loss, cost or expense arising out of any:

**1.**  Request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

**O. War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

**1.** War, including undeclared or civil war;

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**P. Chemical, Biological, Bio-Chemical, And Electromagnetic Exclusion Clause**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

**Q. Extended Radioactive Contamination Exclusion Clause (March 1, 2003)**

**1.** In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

**1.1** ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

**1.2** the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

**1.3** any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

**1.4** the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**Radioactive Contamination Exclusion Clause (U.S.A. Endorsement)**

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses **1.1**, **1.2**, and **1.4** of the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

**R. U.S. Economic And Trade Sanctions Clause**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

## COVERAGE C: MEDICAL PAYMENTS

**I. INSURING AGREEMENT**

    **A.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **1.** On premises you own or rent;

        **2.** On ways next to premises you own or rent; or

        **3.** Because of your operations;

        provided that:

            **a.** The accident takes place in the "coverage territory" and during the policy period;

            **b.** The expenses are incurred and reported to us within one (1) year of the date of the accident; and

            **c.** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    **B.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        **1.** First aid administered at the time of an accident;

        **2.** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        **3.** Necessary ambulance, hospital, professional nursing and funeral services.

**II. EXCLUSIONS**

We will not pay expenses for "bodily injury":

    **A. Any Insured**

    To any insured, except "volunteer workers."

    **B. Hired Person**

    To a person hired to do work for or on behalf of any Insured or a tenant of any Insured.

    **C. Injury On Normally Occupied Premises**

    To a person injured on that part of premises you own or rent that the person normally occupies.

**D. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any Insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**E. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**F. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard."

**G. SECTION 1 – COVERAGE A – II. EXCLUSIONS**

Excluded under **SECTION 1 – COVERAGE A**.

Policy Number: EMA0100899                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COMMUNICABLE DISEASE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

This insurance does not apply to bodily injury, property damage, or medical expense, or any suit arising out of the actual or alleged transmission of, exposure to, or fear or threat of any "communicable disease" from any person, animal, or contaminated environment.

This Exclusion applies even if the claims against any Insured allege negligence or any other wrongdoing in the:

(1) Supervising, hiring, employing, training, or monitoring of anyone that may be infected with or spread a "communicable disease";

(2) Testing for a "communicable disease";

(3) Failure to contain or prevent the spread of the disease;

(4) Reporting of, or failure to report, the "communicable disease" to authorities;

(5) Any liability, cost or expenses to identify, clean, detoxify, remove, monitor, or testing for "communicable disease"; or

(6) Any liability for or loss, cost or expense arising out of any loss of revenue, loss of hire, business interruption, loss of market, delay or any indirect financial loss, howsoever described as a result of any "communicable disease."

"Communicable disease" means any infectious or contagious sickness, disease, illness, or condition, including but not limited to any virus, bacterial infection, fungal infection, or any sickness, disease, illness, or condition required to be reported to any local, state, or federal authority.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THE POLICY REMAIN THE SAME.**

INSURED

Policy Number: EMA0100899

RLI Insurance Company

# SECTION 2

# MARINE LIABILITIES COVERAGE PART

**COVERAGE: WATERCRAFT REPAIRERS LIABILITY**

**1.  INSURING AGREEMENT**

This Company agrees to pay on behalf of the Named Insured all sums which the Named Insured, as a Watercraft Repairer, shall become legally obligated to pay:

**A.**  By reason of the liabilities imposed upon the Named Insured by law for physical loss of or damage to watercraft and their equipment, cargo or other interests on board, occurring only while such watercraft are in the care, custody or control of the Named Insured for the purpose of repair or alteration at the Named Insured location(s), at the location of others while conducting repairs or while such watercraft is being moved via inland waters for a distance not in excess of thirty (30) miles from the Named Insured location or the location of the repair or alteration;

**B.**  By reason of the liabilities imposed upon the Named Insured by law as damages because of property damage caused by a watercraft covered under **A.** above while in the care, custody, or control of the Named Insured and being navigated or operated away from premises described in **A.** above within permitted waters by an employee or employees of the Named Insured or in tow of a tug not owned by or demise chartered to the Named Insured. It is a condition of this Clause **1. B.** that any employee of the Named Insured  engaged in the navigation of a watercraft described herein shall possess such license as is required by the United States Coast Guard or any other applicable regulatory authority to perform the duties being carried out by said employee;

**C.**  "Supplementary Payments" as described in the General Conditions.

**2.  EXCLUSIONS**

This insurance does not apply to:

**A.**  Any claim in respect of loss of life, bodily injury, personal injury, sickness, maintenance, cure or wages of any employee of the Named Insured or liability arising therefore under Jones Act, U. S. Longshoremen and Harbor Worker's Act, Death on the High Seas Act, or any other State or Federal Compensation Act or similar law;

**B.**  Liability assumed under contract or otherwise an extension of the liability imposed on you by law;

**C.**  Any portion of loss or damage for which the Named Insured has been released from liability;

**D.**  Loss, damage or expense arising in connection with work on any vessel which has carried flammable or combustible liquid in bulk as fuel or cargo or any watercraft which has carried flammable compressed gas in bulk, unless such work is done in accordance with the requirements of the rules and regulations of the National Fire Protection Association applicable to such work;

**E.**  Demurrage, detention, loss of time, loss of freight, loss of charter, loss of use and/or similar and/or substituted expenses;

**F.**  Loss, damage, injury or expense which may be recoverable under any other insurance carried by the Named Insured or by others for account of the Named Insured except insurance covering part of this risk insured in conjunction herewith, or any excess insurance over and above the amount recoverable hereunder;

OMGL 112 (09/20)

Page 1 of 3

**G.** Collision liability, tower's liability or liabilities insured against under the customary forms of hull or protection and indemnity policies arising out of the operation of any watercraft owned by, or demise chartered to, the Named Insured or any affiliated or subsidiary concern or party;

**H.** Any liability arising out of, or resulting from, the infidelity, misappropriation, secretion, conversion or other acts of dishonest character on the Named Insured's part or the Named Insured's agents, employees, or subcontractor's;

**I.** Loss or damage caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder;

**J.** Any nuclear incident, reaction, radiation, or any radioactive contamination, whether controlled or uncontrolled, and whether the loss, damage, liability or expense be approximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the risks and liabilities insured under this policy, and whether based on your negligence or otherwise;

**K.** Bodily injury or property damage including clean up and containment costs arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water;

**L.** Civil, criminal, administrative or other fines or penalties; any portion of a judgment or award that represents a multiple of the compensatory amounts, liquidated damages or punitive or exemplary damages; equitable relief, injunctive relief, declarative relief or any other relief or recovery other than monetary amounts; or judgments or awards because of acts deemed uninsurable by law;

**M.** Loss or damage to property, cargo, watercraft, mobile equipment, cargo handling equipment, rail cars, trucks, and/or their trailers, and/or other vehicles in which the Named Insured or any affiliated or subsidiary or concerned individual or party, owns, borrows, leases, or rents;

**N.** Caused by or resulting from (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual impending or expected attack: (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces, or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

**O.** Loss, damage or expense arising, or resulting from, directly or indirectly, out of the operation of any watercraft vessel or craft owned, chartered or operated by the Named Insured or any affiliated or subsidiary concern or individual or party;

**P.** Any liability resulting from or arising out of the unexplained loss or damage, mysterious disappearance, shortage or conversion of goods;

**Q.** Loss of or damage to watercraft placed in the care, custody, or control of the Named Insured for the purpose of storage regardless of whether any work is also to be performed on the watercraft; provided that this exclusion shall not apply to any physical loss or damage to the watercraft (otherwise covered under this Policy) resulting directly from repairs or alterations to said watercraft carried out during such storage period;

**R.** The expense of redoing the work improperly performed by or on behalf of the Named Insured or the cost of replacement of materials, parts or equipment furnished in connection therewith;

**S.** The cost or expense of repairing, replacing or renewing any faultily designed part or parts which cause(s) loss of or damage to the watercraft, or for any expenditure incurred by reason of a betterment or alteration in design;

INSURED

**T.** Any loss of, or damage to watercraft occurring while in the care, custody or control of the Named Insured and otherwise covered under Section **1. A.** hereof, but not discovered within sixty (60) days of the delivery of the watercraft to the owner or demise charterer, or within sixty days after work is completed, whichever first occurs;

**U.** Weight of a load exceeding the registered or rated lifting capacity of any lift device, marine railway or drydock;

**V.** Excluding loss or damage to any and all watercraft of others while being transported by land. Also excluding property or cargo of others unless transported by licensed vehicle or aboard licensed trailer.

**W.** Whenever coverage provided by this Policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

**X. Extended Radioactive Contamination Exclusion Clause (March 1, 2003)**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

**a.** ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

**b.** the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

**c.** any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

**d.** the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**Radioactive Contamination Exclusion Clause (U.S.A. Endorsement)**

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that:

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses **a.**, **b.**, and **d.** of the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

**Y.** In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

Policy Number: EMA0100899                                                RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED(S) & WAIVER OF SUBROGATION

# (BLANKET)

It is agreed that this Policy will include, as an Additional Insured, any person or organization, but only to the extent that you are obligated by a "written contract" to include them as Additional Insured(s) and only with respect to work and/or operations performed by you or on your behalf.

The inclusion of an Additional Insured does not in any way extend the type of coverage afforded by the Policy, nor does it increase the limits of liability under the Policy.

It is further agreed that we waive any right of recovery we may have against any person or organization because of payments we make for "bodily injury" or "property damage" arising out of "your work" with that person or organization, but only to the extent that you are obligated by a "written contract" to provide such waiver of rights of recovery and only with respect to "your work" or to your premises or the premises you use.

INSURED

Policy Number: EMA0100899                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION BUY-BACK ENDORSEMENT
# (SUDDEN AND ACCIDENTAL BASIS)

Notwithstanding any other provision of this Policy or of any underlying insurance, this Policy of insurance is not evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar Federal or State Laws. Any showing or offering of this Policy by the Insured as evidence of insurance shall not be taken as any indication that the Underwriters consent to act as a guarantor or to be sued directly in any jurisdiction whatsoever. **The Underwriters DO NOT CONSENT TO BE GUARANTORS OR TO BE SUED DIRECTLY.**

Such coverage as is afforded by this Policy **shall not apply** to any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

This exclusion **shall not apply**, however, provided that the Insured establishes that all of the following conditions have been met:

1.  The discharge, dispersal, release or escape was accidental and was neither expected nor intended by the Insured. A discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event which could not have been reasonably anticipated or foreseen through the exercise of reasonable prudence.

2.  The discharge, dispersal, release or escape can be identified as commencing at a specific time and date during the term of this Policy.

3.  The discharge, dispersal, release or escape became known to the Insured within seventy-two (72) hours after its commencement.

4.  The discharge, dispersal, release or escape was reported in writing to these Underwriters within thirty (30) days after having become known to the Insured.

5.  The discharge, dispersal, release or escape did not result from the Insured's intentional and willful violation of any government statute, rule or regulation.

**Nothing contained in this endorsement shall operate to provide any coverage with respect to:**

1.  Loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Insured;

2.  Removal of, loss of or damage to subsurface oil, gas or any other substance;

3.  Fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

4.  Any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances.

**The $50,000 limit of liability afforded by this endorsement shall not increase the limit of the Company's liability under this Policy with respect to any one (1) accident or occurrence, and a series of claims arising from the same accident or occurrence shall be treated as due to one (1) accident or occurrence.**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMGL 604 (06/10)                                                                  Page 1 of 1

INSURED

Policy Number: EMA0100899

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# THIS INSURANCE IS PRIMARY INSURANCE

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance is primary for the organization shown in the schedule, but only with respect to liability arising out of your work for that organization by or for you. Other insurance afforded to that organization will apply as excess and not contribute as primary to the insurance afforded by this endorsement.

We agree to provide the organization listed below with at least thirty (30) day's notice [ten (10) day's notice for non-payment of premium] of cancellation.

All other endorsements, provisions, conditions and exclusions of this insurance shall remain unchanged and apply to the organization described below.

| Name of Organization |
|---|
| Arrowhead Lake Association, 870 CA-173, Lake Arrowhead, CA 92352 |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

As required by an "insured contract," but only with respect to "your work."

OMGL 608 (08/05)

Page 1 of 1

INSURED

Policy Number: EMA0100899                                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUBCONTRACTOR'S WARRANTY

In consideration of the premium charged, it is a condition precedent to this insurance that the:

1.  Insured warrants that it has obtained or will obtain certificates of insurance with limits of liability equal to or greater than those provided by this policy from all subcontractors prior to commencement of any work performed for the insured.

2.  Insured warrants that it has confirmed or will confirm that the subcontractors' insurance policies are valid and have not been cancelled prior to commencement of any work by the subcontractors performed for the insured.

3.  Insured warrants that it has obtained or will obtain hold harmless agreements from subcontractors indemnifying against all losses from the work performed for the insured by any and all subcontractors.

4.  Insured warrants that it has confirmed or will confirm that it is named as additional insured on all subcontractors general liability policies.

5.  Insured warrants that it has given or will give notice of claim to all "potential insurers" as soon as practicable.

 "Potential insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or an additional insured. "Potential insurers" includes the insurers of all subcontractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).

In the event the insured fails or failed to comply with the above conditions for a subcontractor whose work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy. Insured agrees that we need not demonstrate any prejudice to us in order to enforce these conditions of coverage.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms of the conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  EMA0100899                                                RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIFIC WORK EXCLUSION AND/OR BUY-BACK ENDORSEMENT

This insurance does not apply nor do we have a duty to defend any loss, claim, or "suit" for "bodily injury," "property damage," "personal injury," "advertising injury" or medical payments arising directly or indirectly out of any type of work, repairs, operations or completed operations as listed below.

1.    Non-Marine Work

**Definition of Non-Marine Work:**

The term "Non-Marine Work" as used in this endorsement means any work, repairs, operations or  completed operations which are not specifically performed to a watercraft or to a watercraft's  component parts including but not limited to its machinery, equipment, accessories, accessories, gear or  motors.

THE ABOVE  EXCLUSION(S) FOR MARINE OR NON-MARINE WORK SHALL NOT APPLY TO THE TYPE OF WORK, REPAIRS, OPERATIONS OR COMPLETED OPERATIONS AS LISTED BELOW.

1.    NONE

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMGL 635 (03/13)                                                                Page  1 of 1

INSURED

Policy Number: EMA0100899                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BREACH OF CONTRACT EXCLUSION

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," "personal and advertising injury" arising directly or indirectly out of the following:

a.   Breach of express or implied contract;

b.   Breach of express or implied warranty;

c.   Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

d.   Libel, slander or defamation arising out of or within the contractual relationship.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMP 659 (03/13)                                              Page 1 of 1

Policy Number:  EMA0100899                                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GAS FREEING EXCLUSION

It is mutually understood and agreed that without prior written approval from Underwriters, this Policy excludes any loss, damage, liability or expense including legal fees as a result of gas-freeing including stripping, blowing and other similar activities relating to gas freeing.

With respect to operations covered hereunder for gas freeing including stripping, blowing and other similar activities related to gas freeing, it is understood and agreed that this coverage shall be suspended and void, and no coverage shall be afforded for any time period when the following equipment is used in covered operations:

**1.**   Any electrically operated fan or blower.

**2.**   Any device with an electrically operated motor.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number: EMA0100899                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOLD, MILDEW AND FUNGUS EXCLUSION

This insurance does not apply to, and we are not obligated to defend any loss, "claim" or "suit" or other proceeding for:

**1.** Actual or alleged "bodily injury," "property damage" or "personal injury," including death at any time resulting therefrom, caused by the actual, alleged or threatened existence or presence of, exposure to, inhalation of, ingestion of, contact with or absorption of any mold, mildew, "fungus" or decaying substance, or

**2.** Any loss, cost or expense arising out of the diminution in value, loss of market value, loss of use, monitoring, treatment, neutralizing, removal or abatement of any mold, mildew, "fungus" or decaying substance alleged to be causative or potentially causative of "bodily injury," "property damage" or "personal injury."

"Fungus" includes any mycotoxins, spores, scents or byproducts produced or released by fungi.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number: EMA0100899                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOCATION SUPPLEMENTARY SCHEDULE

The Declarations includes the following as Covered Locations:

BRIAN PERRIN MARINE, INC., DBA: UPGRADE MARINE, 2608 SHELTER ISLAND DR. STE. #300, SAN DIEGO, 92106

Upgrade Marine, 955 Harbor Island Dr. #102, San Diego, CA 92101

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number: EMA0100899                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARINE EQUIPMENT FLOATER SCHEDULE

**Limits of Insurance:**

$50,000 _____    Limit each Accident or Loss

$50,000 _____    Limit unscheduled items

$500 _____    Limit any one unscheduled item or piece of equipment

| COVERED PROPERTY & DEDUCTIBLES | Unscheduled Limit | Deductible |
|---|---|---|
| Tools and Equipment, meaning small tools and equipment used in the operation of the assured's business; | $20,000 | 1% minimum $250 |
| Inventory or Supplies, meaning items held for sale or use by the assured's business; | $20,000 | 1% minimum $250 |
| Office fixtures, furniture or equipment used solely for operation of the assured's business | $10,000 | 1% minimum $250 |

**SCHEDULED EQUIPMENT**

Deductible per COVERED PROPERTY & DEDUCTIBLES section above unless as scheduled for an item listed below.

| Description | Limit | Deductible | Loss Payee/Mortgagee |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMP 653 (04/17)                                                    Page  1 of 1

Policy Number:  EMA0100899                                                                RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARINE EQUIPMENT FLOATER ENDORSEMENT

**LIMITS OF INSURANCE:**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the MARINE EQUIPMENT FLOATER SCHEDULE.

The most we will pay for one single item is the applicable Limit of Insurance shown in the MARINE EQUIPMENT FLOATER SCHEDULE, unless an item is specifically scheduled to this policy.

The value of Covered Property is based on the actual cash value at the time of a loss (with a deduction for depreciation).

**DEDUCTIBLE:**

Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim the deductible amount as set forth in the MARINE EQUIPMENT FLOATER SCHEDULE, will be deducted from each claim.

**COVERED PROPERTY:**

Covered Property includes the property described in MARINE EQUIPMENT FLOATER SCHEDULE that is owned by or is under the care, custody and control of the Assured and not specifically excluded elsewhere in this endorsement.

**PROPERTY EXCLUDED:**

This insurance does not provide coverage for:

**A.** Aircraft, watercraft (except motors, parts, equipment, and accessories not attached to watercraft), automobiles, trucks, trailers (except boat trailers), semi trailers, and any other vehicles (including parts and accessories thereof) which are both designed and licensed for highway use;

**B.** Money, securities, accounts, bills, food stamps, accounts receivable, other evidences of debt or other valuable papers and records;

**C.** Contraband, or property in the course of illegal transportation or trade;

**D.** Plans, blueprints, mechanical drawings, designs, or specifications or other data stored on paper or electronically. This does not apply to prepackaged software;

**E.** Outdoor property, including fences, radio or television antennas, satellite dishes, signs and their lead-in wiring, masts, towers, trees, shrubs or plants;

**F.** Any portion of loss or damage for which the Assured has been released from liability;

**G.** Property while loaned, leased or rented to others, or possession of which has been transferred to other pursuant to any form of agreement of sale;

**H.** Land, buildings, sheds, or any other real property, cement, sand, gravel, earthen fill, building materials or supplies of any kind;

**I.** Property while airborne;

**J.** Property while in cofferdams or while being used in strip or underground mining, tunneling, or similar operations, unless specifically endorsed hereon;

OMP 652 (07/16)                                                                              Page 1 of 5

INSURED

**K.** All inventories of fuel and/or lube oil, except if this endorsement is attached to a Hull policy and coverage is included on the Schedule of Vessels;

**L.** Personal effects;

**M.** Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals;

**N.** Furs, fur garments and garments trimmed with fur.

**COVERED CAUSES OF LOSS**

All Risks of Direct Physical Loss unless the loss is:

**A.** Excluded in **EXCLUSIONS** section below; or

**B.** Limited in the **LIMITATIONS** that follow:

**LIMITATIONS**

**1.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or others instances where there is no physical evidence to show what happened to the property.

**2.** Property that has been transferred to a person or to a place on the basis of unauthorized instructions.

**EXCLUSIONS:**

This endorsement does not insure against:

**A.** Wear, tear, gradual deterioration, inherent vice, latent defect, dampness of atmosphere, ice, freezing, extremes of temperatures, mechanical or electrical breakdown or failure, unless such damage is the result of other perils insured by this endorsement;

**B.** Insects, animals, vermin, or marine life;

**C.** Claims for damage or destruction of accounts, bills, currency, deeds evidence of debt, money, notes and securities;

**D.** Loss or damage caused by misappropriation, secretion, conversion, infidelity or any intention or dishonest act on the part of the Assured or other party of interest, his of their employees or agents or any persons to whom the property may be entrusted (carriers for hire excepted);

**E.** Unexplained loss, mysterious disappearance, or shortage disclosed upon taking of inventory;

**F.** Rusting, bending, twisting, marring, scratching or breakage;

**G.** Loss or damage caused by delay, loss of market, loss of use, or interruption of business;

**H.** Loss or damage by theft from an unattended vehicle unless:

**1.** Said vehicle is equipped with a fully enclosed body or compartment, the doors and windows of which shall have been securely locked;

**2.** The theft was from a compartment in or on the vehicle that was securely locked; or

**3.** The vehicle was in a locked garage or fenced lot with locks or other proper security;

**I.** Missing Property – we do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property;

**J.** Any process of refinishing, renovating or repairing;

**K.** Loss or damage caused by or resulting from:

   **1.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack:

   **a.** by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

   **b.** by military, naval or air forces; or

   **c.** by any agent of any such government, power, authority or forces;

   **2.** Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

   **3.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

**L.** Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the perils insured against in this endorsement; however, subject to the forgoing and all provisions of this endorsement, direct loss by fire resulting from nuclear radiation or radioactive contamination is insured against by this endorsement.

## SPECIAL CONDITIONS:

### A. Misrepresentation and Fraud

This entire section of the Policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

### B. Notice of Loss

The Insured shall as soon as practicable report in writing to the Company or its agent, every loss, damage or occurrence which may give rise to a claim under this section of the Policy and shall so file with this Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

### C. Examination Under Oath

The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Company and subscribe the same; and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any act of the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

### D. Settlement Of Loss

All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

INSURED

### E. Subrogation

In the event of any accident, loss, damage or injury for which claim may be made under this section of the Policy, the Insured agrees to subrogate to this Company all rights which the Insured may have against any other person or entity with respect to said accident, loss, or occurrence. In case of any agreement or act, past or future, by the Insured, whereby any right of recovery of the Insured, against any person or entity, is released or lost, which would on payment of loss by the Company, belong to the Company but for such agreement or act, this insurance shall be vitiated to the extent that this Company's right of subrogation has been impaired thereby; provided, however that the right of this Company to retain or recover any premium paid or due hereunder shall not be affected. The cost and expense of prosecuting any claim, shall have an interest by subrogation or otherwise, shall be divided between the Insured and this Company proportionately to the amount which they would be entitled to receive respectively if such prosecution should be successful. It is agreed that this Company waives any right of subrogation against any subsidiary, affiliated or interrelated Company of the Insured, except to the extent that any such Company is insured against the liability asserted.

### F. Protection of Property

In the case of loss, it shall be necessary for the Insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or the Company. In recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the company proportionately to the extent of their respective interests.

### G. Appraisal

If the Insured and Company fails to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which the appraisal is pending. The appraisers shall then appraise the Loss, stating separately the actual cash value at the time of loss and failing to agree, shall submit their differences to the umpire. An award in writing of any two (2) shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by an act relating to appraisal.

### H. Transfer of Interest

All coverage under this section of the Policy shall terminate upon the sale, transfer, assignment or pledge of the property insured unless the prior written consent of the Company has been obtained.

### I. Conformity to Statute

Terms of this section of the Policy which are in conflict with the statutes of the State wherein this section of the Policy is issued are hereby amended to conform to such statutes.

### J. Chemical, Biological, Bio-Chemical, and Electromagnetic Clause

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

### K. Extended Radioactive Contamination Exclusion Clause (March 1, 2003)

    **1.**  In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

a. ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

b. the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

c. any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

d. the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**Radioactive Contamination Exclusion Clause (U.S.A. Endorsement)**

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that:

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses **a.**, **b.**, and **d.** of the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

**L. U.S. Economic and Trade Sanctions Clause**

Whenever coverage provided by this Policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

**GENERAL CONDITIONS:**

Coverage provided for in this endorsement is subject to the GENERAL CONDITIONS or Conditions of the Policy that this endorsement attaches to.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: EMA0100899                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This policy, subject to all applicable terms, conditions and exclusions, covers losses attributable to direct physical loss or physical damage occurring during the period of insurance. Consequently and notwithstanding any other provision of this policy to the contrary, this policy does not insure for any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occurring concurrently or in any sequence from any virus, bacterium, disease, illness, or any microorganism. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

This endorsement applies to all coverage extensions, additional coverages, exceptions to any exclusion and other coverage grant(s).

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THE POLICY REMAIN THE SAME.**

INSURED

Policy Number: EMA0100899                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARINE EQUIPMENT FLOATER FLOOD EXCLUSION

Notwithstanding anything to the contrary contained herein, it is understood and agreed that this insurance shall not apply to, and we are not obligated to defend, any claim relating to loss, damage, liability, or expense incurred by the Insured as the result of "Water."

"Water," meaning:

1.  Flood, surface water, waves, tidal waves, over flow of any body of water or their spray, all whether driven by wind or not;

2.  Mudslide or mudflow;

3.  Water that backs up from a sewer or drain;

4.  Water under the ground surface pressing on, or flowing or seeping through:

    a.  Foundations, walls, floors or paved surfaces;

    b.  Basements, whether paved or not; or

    c.  Doors, windows or other openings;

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number:  EMA0100899

RLI Insurance Company

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary

President & COO

ILF 0001C (04/16)

INSURED

Policy Number: EMA0100899                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

ENDORSEMENT EFFECTIVE DATE: 11/12/2021    (12:01 a.m.)    ☐ ADDITIONAL PREMIUM    $
ENDORSEMENT NUMBER: 1                                     ☐ RETURN PREMIUM       $
INSURED NAME:                                            ☒ NIL                  $ ■
 Brian Perrin Marine, Inc.                               ☐                      $

Upgrade Marine, BP Solar Electric                        ☐                      $
                                                         ☐                      $ _____
                                                         **TOTAL** $ ■

IT IS UNDERSTOOD AND AGREED THAT:

☐ 1.   PREMIUM                    ☐ 7.   COVERAGE               ☐ 13.   COVERAGE IS CANCELLED
                                                                        ☐ SHORT RATE
☐ 2.   DEPOSIT PREMIUM            ☐ 8.   INCEPTION DATE                  ☐ PRO RATE
                                                                        ☐ MINIMUM PREMIUM APPLIES
☐ 3.   MINIMUM PREMIUM            ☐ 9.   EXPIRATION DATE

☐ 4.   RATE                       ☐ 10.  TERMS                  ☐ 14.   ADDITIONAL INSURED BUT ONLY
                                                                        AS RESPECTS THE OPERATIONS
☐ 5.   INSTALLMENT                ☐ 11.  NAME OF INSURED                 OF THE NAMED INSURED

☐ 6.   AUDIT                      ☒ 12.  ADDRESS OF INSURED

☐   IS CHARGED FOR THE PERIOD:          IS AMENDED TO READ AS FOLLOWS:


It is understood and agreed that the Insured's Mailing Address on Policy Declarations Page, OMP 100, is hereby amended as follows:

Brian Perrin Marine, Inc.
DBA: Upgrade Marine, BP Solar Electric
955 Harbor Island Dr., STE# 120
San Diego, CA 92101


**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

BY: _____

DATE OF ISSUE:  11/15/2021

CPR 2100 (11/95)                                                         Page 1 of 1

INSURED

# EXHIBIT 3

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Samuel G. Lynn, Esq. (SBN:317563)<br>Law Office of Samuel G. Lynn<br>501 W. Broadway, Ste 862<br>San Diego, CA 92101<br><br>TELEPHONE NO: (619)377-8314     FAX NO. *(Optional):* (619)374-2169<br>E-MAIL ADDRESS *(Optional):* slynn@sglinjurylaw.com<br>ATTORNEY FOR *(Name):* Plaintiff, Garrot Newby | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br><br>03/14/2023 at 02:13:15 PM<br><br>Clerk of the Superior Court<br>By Brenda Ramirez,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego |
|---|
| STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS: 330 W. Broadway<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: San Diego, Central |

PLAINTIFF: Garrett Newby, an individual

DEFENDANT: Justin Cardenas, an individual; Upgrade Offroad, a corporation; Upgrade Marine, a corporation;and

[X] DOES 1 TO ___50___

| COMPLAINT—Personal Injury, Property Damage, Wrongful Death | CASE NUMBER: |
|---|---|
| [ ] AMENDED *(Number):*<br>Type *(check all that apply):*<br>[X] MOTOR VEHICLE    [ ] OTHER *(specify):*<br>[ ] Property Damage   [ ] Wrongful Death<br>[X] Personal Injury   [ ] Other Damages *(specify):* | 37-2023-00010440-CU-PO-CTL |

Jurisdiction *(check all that apply):*
[ ] ACTION IS A LIMITED CIVIL CASE
   Amount demanded [ ] does not exceed $10,000
                   [ ] exceeds $10,000, but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
   [ ] from limited to unlimited
   [ ] from unlimited to limited

1. Plaintiff *(name or names):* Garrett Newby

   alleges causes of action against defendant *(name or names):* Justin Cardenas, an individual; Upgrade Offroad, a corporation; Upgrade Marine, a corporation; and DOES 1 - 50.

2. This pleading, including attachments and exhibits, consists of the following number of pages: 5

3. Each plaintiff named above is a competent adult

   a. [ ] except plaintiff *(name):*

      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor   [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*

      (5) [ ] other *(specify):*

   b. [ ] except plaintiff *(name):*

      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor   [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*

      (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death | Code of Civil Procedure, § 425.12<br>www.courts.ca.gov |
|---|---|---|

PLD-PI-001

| SHORT TITLE: Newby v. Cardenas, et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name):*
    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

    a. ☒ **except defendant** *(name):* Upgrade Marine
        (1) ☒ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity *(describe):*

        (4) ☐ a public entity *(describe):*

        (5) ☐ other *(specify):*

    c. ☐ **except defendant** *(name):*
        (1) ☐ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity *(describe):*

        (4) ☐ a public entity *(describe):*

        (5) ☐ other *(specify):*

    b. ☒ **except defendant** *(name):* Upgrade Offroad
        (1) ☒ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity *(describe):*

        (4) ☐ a public entity *(describe):*

        (5) ☐ other *(specify):*

    d. ☐ **except defendant** *(name):*
        (1) ☐ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity *(describe):*

        (4) ☐ a public entity *(describe):*

        (5) ☐ other *(specify):*

    ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

    a. ☒ Doe defendants *(specify Doe numbers):*    1-50    were the agents or employees of other
        named defendants and acted within the scope of that agency or employment.

    b. ☒ Doe defendants *(specify Doe numbers):*    1-50    are persons whose capacities are unknown to
        plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because

    a. ☒ at least one defendant now resides in its jurisdictional area.
    b. ☒ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
    c. ☐ injury to person or damage to personal property occurred in its jurisdictional area.
    d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, and

    a. ☐ has complied with applicable claims statutes, or
    b. ☐ is excused from complying because *(specify):*

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE: Newby v. Cardenas, et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

a. ☒ Motor Vehicle

b. ☒ General Negligence

c. ☐ Intentional Tort

d. ☐ Products Liability

e. ☐ Premises Liability

f. ☐ Other *(specify):*

11. Plaintiff has suffered

a. ☒ wage loss

b. ☐ loss of use of property

c. ☒ hospital and medical expenses

d. ☒ general damage

e. ☐ property damage

f. ☒ loss of earning capacity

g. ☐ other damage *(specify):*

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are

a. ☐ listed in Attachment 12.

b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

a. (1) ☒ compensatory damages

   (2) ☐ punitive damages

   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*

   (1) ☒ according to proof

   (2) ☐ in the amount of: $

15. ☒ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

   GN-1; MV-1; MV-2

Date: 03.06.2023

Samuel G. Lynn, Esq.
(TYPE OR PRINT NAME)

▶ 

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 3 of 3

For your protection and privacy, please press the Clear This Form button after you have printed the form.

PLD-PI-001(1)

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| Newby v. Cardenas, et al. | | |

ONE           **CAUSE OF ACTION—Motor Vehicle**
(number)

ATTACHMENT TO [X] Complaint     [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name):* Garrett Newby

MV- 1. Plaintiff alleges the acts of defendants were negligent; the acts were the legal (proximate) cause of injuries and damages to plaintiff; the acts occurred

on *(date):* February 5, 2022

at *(place):* Near intersection of Ted Kipf Road/Wash Road and Highway 78
Imperial Sand Dunes, California

MV- 2. DEFENDANTS

a. [X] The defendants who operated a motor vehicle are *(names):* Justin Cardenas, and

[X] Does     1     to     5

b. [X] The defendants who employed the persons who operated a motor vehicle in the course of their employment are *(names):* Upgrade Offroad, Upgrade Marine, and

[X] Does     6     to     20

c. [X] The defendants who owned the motor vehicle which was operated with their permission are *(names):* Upgrade Offroad, Upgrade Marine, Justin Cardenas, and

[X] Does     4     to     30

d. [X] The defendants who entrusted the motor vehicle are *(names):* Upgrade Offroad, Upgrade Marine and

[X] Does     1     to     50

e. [X] The defendants who were the agents and employees of the other defendants and acted within the scope of the agency were *(names):* Justin Cardenas, and

[X] Does     1     to     50

f. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are [ ] listed in Attachment MV-2f [ ] as follows:

[ ] Does          to

Page  4

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(1) [Rev. January 1, 2007]

**CAUSE OF ACTION—Motor Vehicle**

Code of Civil Procedure 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

PLD-PI-001(2)

| SHORT TITLE: Newby v. Cardenas, et al. | CASE NUMBER: |
|---|---|

TWO _____ **CAUSE OF ACTION—General Negligence**    Page __5__
(number)

ATTACHMENT TO [X] Complaint    [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* Garrett Newby

alleges that defendant *(name):* Justin Cardenas, Upgrade Offroad, Upgrade Marine, and

[X] Does _____1_____ to ____50____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff

on *(date):* February 5, 2022

at *(place):* Near intersection of Ted Kipf Road/Wash Road and Highway 78
Imperial Sand Dunes, California

*(description of reasons for liability):*

Defendant Cardenas owed Plaintiff a duty to use due care in the operation of Defendant's vehicle and breached such duty when he started driving before Plaintiff had a chance to secure his seatbelt, drove at excessive speeds, and drove into a "burnpit" which caused the vehicle to flip over.

As a direct and proximate cause of Defendant Cardenas' negligence, Plaintiff suffers severe physical injuries, resulting in both past and future economic and non economic damages. Defendant Cardenas was acting as an employee and agent of Defendants Upgrade Marine, Upgrade Offroad, and DOES 1-50. Defendants Upgrade Marine, Upgrade Offroad, and DOES 1-50 are vicariously liable for Defendant Cardenas' negligence.

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Code of Civil Procedure 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.